## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAFT WILSON**                                        **CIVIL ACTION**

**versus**                                            **NO. 13-452**

**STEVE RADER, WARDEN**                                **SECTION: "E" (3)**

## REPORT AND RECOMMENDATION

        This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

        Petitioner, Taft Wilson, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.  On July 14, 2009, he was convicted of simple burglary under

Louisiana law.[1]  On February 25, 2011, he pleaded guilty to being a quadruple offender and was sentenced as such to a term of twenty years imprisonment.[2]  On June 13, 2012, the Louisiana Fourth Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on January 25, 2013.[4]

On or about February 10, 2013, petitioner filed the instant federal *habeas corpus* application.[5]  The state concedes that the application was timely filed and that petitioner has exhausted his remedies in the state courts.[6]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

---

[1] State Rec., Vol. II of III, transcript of July 14, 2009, p. 69; State Rec., Vol. I of III, minute entry dated July 14, 2009.

[2] State Rec., Vol. II of III, transcript of February 25, 2011; State Rec., Vol. I of III, minute entry dated February 25, 2011; State Rec., Vol. I of III, guilty plea form.

[3] State v. Wilson, No. 2011-KA-1166, 2012 WL 4760654 (La. App. 4th Cir. June 13, 2012); State Rec., Vol. II of III.

[4] State v. Wilson, 105 So.3d 711 (La. 2013) (No. 2012-KO-1621); State Rec., Vol. II of III.

[5] Rec. Doc. 1.

[6] Rec. Doc. 11, p. 6 and n.12.

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."
Bell v. Cone, 535 U.S. 685, 693 (2002).

       As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

       As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

       Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways. First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case. Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one." Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

## II.  Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

of this case as follows:

> In addition to his pastoral work, Franciscan Brother Mark Garrett ("Brother Mark") performs "a lot of the maintenance on the whole parish plant" at St. Mary of the Angels Church.  He is responsible for ensuring that any needed repairs are made in the rectory, church, and school.  As part of his duties, Brother Mark checks on the school building daily, save for Sundays.  The school has been closed since Hurricane Katrina in 2005.
> On the afternoon of 5 May 2008, Brother Mark called the police to "investigate some activity at the school" because there was a strange vehicle parked outside.  Military police were the first

- 5 -

responders to the scene.  Brother Mark met them on the street and indicated where the activity in the school was occurring.  Brother Mark waited for them outside, and they eventually returned with three individuals.  These individuals were detained on the grass on the Congress Street side of the school until the New Orleans police arrived.

Five to ten minutes after the three individuals were brought from within the school, Brother Mark was taken into the boiler room of the school, which was in disarray – the chain to the doors had been cut, the doors were open, and the cut lock lay on the ground.  Brother Mark identified pictures taken of the boiler room area in back of the school, and confirmed their accurate depiction of the crime scene.  Of particular interest for our analysis of this case is state's Exhibit 1, depicting a broken lock.  State's Exhibit 5 shows what appears to be cut electrical wires with a thick reddish metal interior that appears to be copper.  State's Exhibit 7 shows a bolt cutter on top of an office filing cabinet.  State's Exhibit 8 depicts what appears to be a metal cutting saw.  State's Exhibit 11 depicts another big cutter.  And state's Exhibit 12 shows a brown plastic bucket containing cut links of metal piping.  The metal is a reddish or copper colored.  Brother Mark denied giving anyone – including the three detained individuals – permission to enter the school on 5 May 2008.  Though he "wouldn't swear to it," Brother Mark believed that he had checked the school a day earlier, and it was not in the condition depicted in the pictures at that time.  The first time he saw it in that condition was 5 May 2008.  This testimony is consistent with his testimony that he checked the school every day except Sundays.

On cross examination, Brother Mark testified that there had been prior burglaries in the school, but not in the boiler room.  The earlier burglaries had left holes cut into the fences.  Brother Mark had given up on repairing these holes.  Prior burglars had resulted in tools being left in the main part of the building.

New Orleans Police Officers Terrell Seiber and Gerald Lee responded to the scene.  Upon arriving, Officer Seiber spoke to both Louisiana Guardsman Edward Moss and Brother Mark.  Wilson was being detained with two other individuals, both juveniles.  Officers Seiber and Lee were directed through a chain-link gate.  A chain securing the gate had been cut.  They proceeded through a yard area to the boiler room, where an electric junction box had been substantially damaged.[FN1] Large gauge copper electrical wire that had been cut and removed from the box and was collected in a pile on the floor.  Several pieces of copper pipe had been collected in a

box on the floor.  Burglary tools were present.  Officer Seiber identified the photos of the crime scene, confirmed that heavy gauged copper wiring was cut from the electrical box, and that copper piping had been collected on the ground and "inside the thing," presumably the brown plastic box.

> [FN1]  The state's exhibits depict and/or demonstrate many of the facts discussed herein.

After exiting the boiler room, Officers Seiber and Lee read Wilson and the two juveniles (his sons) their <u>Miranda</u> rights and placed them in a police car.[7]

### III.  Petitioner's Claim

In his federal application, petitioner claims that there was insufficient evidence to support his conviction.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> Wilson argues that the evidence introduced at trial is insufficient to support his simple burglary conviction.  In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.  <u>State v. Mussall</u>, 523 So.2d 1305, 1309 (La. 1988).  The reviewing court is not permitted to consider just the evidence most favorable to the prosecution; it must consider the record as a whole since that is what a rational trier of fact would do.  If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted.  The factfinder's discretion will be impinged upon only to the extent necessary to

---

[7] <u>State v. Wilson</u>, No. 2011-KA-1166, 2012 WL 4760654, at *1-2 (La. App. 4th Cir. June 13, 2012); State Rec., Vol. II of III.

guarantee the fundamental protection of due process of law. Id., 523 So.2d at 1309-10. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La. 1992).

When circumstantial evidence forms the basis of a conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. See State v. Shapiro, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. See State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. See State v. Jacobs, 504 So.2d 817 (La. 1987). If a rational trier of fact reasonably rejects a defendant's hypothesis of innocence, that hypothesis falls; and, unless another one creates reasonable doubt, a defendant is guilty. See State v. Captville, 448 So.2d 676 (La. 1984).

A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 00-1082, p. 32-33 (La.App. 4 Cir 2/6/02), 809 So.2d 1093, 1111. The determination of whether the requisite intent is present in a criminal case is for the trier of fact to determine. State v. Huizar, 414 So.2d 741, 751 (La. 1982), citing State v. Butler, 322 So.2d 189 (La. 1975). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, 443 U.S. at 319.

La. R.S. 14:62, in relevant part, defines simple burglary as "the unauthorized entering of any dwelling ..., or other structure, ... with the intent to commit a felony or any theft therein...." Thus, in order to sustain the conviction of Wilson, the record must show that Wilson entered a structure without authorization to do so, and that he intended to commit a felony or a theft inside the structure.

The record shows that Wilson entered St. Mary of the Angels School without authorization. Brother Mark testified that he called the police about some "activity in the school" and that when the

military police arrived, he guided them to "the side of the school ....
where the activity was going on."  Although Brother Mark was not
allowed to go in with the military police, he observed them exit the
school with Wilson and two juveniles.   After Wilson and the
juveniles came out, Brother Mark was taken into the boiler room,
where he observed it in disarray.  Though he could not swear to it,
Brother Mark recalled that he had been in the boiler room the day
before, at which time the boiler room had not been in the disarray that
it was in after he was there by the military police after they had
removed Wilson and the juveniles from that part of the school.  Based
upon Brother Mark's testimony, a rational trier of fact could have
inferred, according to reason and experience, that the military police
detained Wilson and his companions in the boiler room.  We can find
no other reasonable hypothesis as to why the military police detained
Wilson and the juveniles.  The fact that they were detained in the
boiler room is compounded by the disarray it was in.

      As to Wilson's and his companions' reason for being in the
boiler room, the physical evidence leads to the clear conclusion that
they were there cutting copper wire and pipe to remove it from the
school without permission.  The photographs introduced at trial tell
the story.  State's Exhibits 7 and 11 depict two separate big bolt
cutters; state's Exhibit 8 depicts a metal cutting saw; state's Exhibits
5 and 6 depict an electric box where thick copper wiring was cut out;
state's Exhibit 13 depicts the wiring placed together in the middle of
the floor; and state's Exhibit 12 depicts a plastic bucket and lid.  The
bucket contains copper piping, neatly cut to fit into the container.  It
is obvious that the bucket would allow for easy transport.  This
evidence makes it clear that whoever was in the boiler room was
cutting copper wiring and piping to remove it.  No other conclusion
would be reasonable.

      Additional evidence confirms the conclusion that whoever
was in the boiler room was not authorized to be there.  Officer Seiber
testified that the chain securing a chain-link gate on the way to the
boiler room had been cut.  State's Exhibit 1 depicts a cut bolt lock.
All of this evidence supports the jury's guilty verdict:  it is sufficient
evidence for the jury to have found beyond a reasonable doubt that
Wilson was caught in the boiler room without authorization to be
there, while he was in the middle of trying to commit theft of the
copper wiring and copper piping discovered on the floor in the
middle of the room.  Though Brother Frank [sic] testified that the
school had been previously burglarized, he said no one had been in
the boiler room.  Moreover, any suggestion that someone else cut the

> wiring and pipes, and left it there along with their tools, is clearly
> refuted by other evidence.[8]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[9]

Because sufficiency of the evidence claims present a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claims unless he shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing in this proceeding.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a

---

[8] State v. Wilson, No. 2011-KA-1166, 2012 WL 4760654, at *2-4 (La. App. 4th Cir. June 13, 2012); State Rec., Vol. II of III.

[9] State v. Wilson, 105 So.3d 711 (La. 2013) (No. 2012-KO-1621); State Rec., Vol. II of III.

sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential <u>Jackson</u> standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." <u>Parker v. Matthews</u>, 132 S.Ct. 2148, 2152 (2012); <u>see also</u> <u>Coleman v. Johnson</u>, 132 S.Ct. 2060, 2062 (2012).

   In the instant case, petitioner argues that there was no proof that connected him to the tools, the broken chain on the gate, the disarray in the boiler room, or the suspicious car.  He further argues that there was no proof that he entered the boiler room, that he entered with the intent to commit a crime, or that his fingerprints were found at the scene.  While there may have been no direct evidence of petitioner's guilt, there clearly was abundant circumstantial evidence, and it is beyond cavil that circumstantial evidence can alone be sufficient to support a conviction under the <u>Jackson</u> standard.  <u>See, e.g.</u>, <u>Taylor v. Scott</u>, No. 94-40620, 1995 WL 84080, at *1 (5th Cir. Feb. 7, 1995) ("[A] sufficiency-of-the-evidence claim may be resolved based on circumstantial evidence."); <u>Williams v. Scott</u>, No. 93-1342, 1994 WL 612743, at *7 (5th Cir. Oct. 26, 1994) ("[T]he evidence may be sufficient even though entirely circumstantial."); <u>Schrader v. Whitley</u>, 904 F.2d 282, 287

(5th Cir. 1990); Pate v. Wainwright, 607 F.2d 669, 670 (5th Cir. 1979); Brown v. Cain, Civ. Action No. 99-2667, 2001 WL 96410, at *1 (E.D. La. Feb. 2, 2001).[10]

In its decision, the Louisiana Fourth Circuit Court of Appeal accurately summarized the evidence presented at trial. When that evidence is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal *habeas* court, relief is not warranted.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition of **Taft Wilson** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

---

[10] Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded, La.Rev.Stat.Ann. § 15:438, does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S.Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this thirtieth day of July, 2013.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.